STATE OF MAINE                              SUPERIOR COURT
CUMBERLAND, ss                              Docket No.: AP-16-15

DESIGN DWELLINGS, INC. d/b/a    )
DDI CONSTRUCTION,               )
                                )
Plaintiff,                      )          ORDER ON DEFENDANT'S
                                )          MOTION FOR JUDGMENT ON
v.                              )          THE PLEADINGS
                                )
TOWN OF WINDHAM,                )
                                )          STATE OF MAINE
Defendant.                      )          Cumberland ss Clerk's Office

                                           MAR 1 3 2017
                                           RECEIVED

I.     Background

Plaintiff Design Dwellings, Inc. d/b/a DDI Construction ("DDI") seeks judicial review of the Town of Windham's award of a construction contract to Party-in-Interest R.J. Grondin & Sons ("R.J. Grondin") rather than to Plaintiff, which was the lowest bidder. In February 2016, Windham solicited bids from general contractors for a construction project known as "Angler's Road Realignment" ("Project"). The Project is a Maine Department of Transportation ("MDOT") Municipal Partnership Initiative ("MPI") funded by the MDOT, Windham, and the Portland Water District. Plaintiff submitted a bid for the Project on or before February 25, 2016. On March 16, 2016, after request and review of additional information from DDI and R.J. Grondin, Windham notified DDI that the Project would be awarded to R.J. Grondin.

DDI brought this action seeking review of Windham's decision to award the Project to R.J. Grondin rather than DDI, which submitted the lowest bid. DDI asserts claims for promissory estoppel and breach of contract. Windham moves the Court for judgment on the pleadings.

**Plaintiff-Robert Ruesch Esq.
Defendant Town of Windham-
Stephen Langsdorf, Esq./Kevin
Haskins, Esq.**

1

II.     Standard of Review

A defendant's motion for judgment on the pleadings is generally treated as the equivalent of a motion to dismiss for failure to state a claim. *MacKerron v. MacKerron*, 571 A.2d 810, 813 (Me. 1990). "[T]he court resolves a defense motion for judgment on the pleadings by assuming that the factual allegations are true, examining the complaint in the light most favorable to plaintiff, and ascertaining 'whether the complaint alleges the elements of a cause of action or facts entitling the plaintiff to relief on some legal theory.'" *Cunningham v. Haza*, 538 A.2d 265, 267 (Me. 1988) (quoting *Robinson v. Washington Cnty.*, 529 A.2d 1357, 1359 (Me. 1987)).

III.    Discussion

Plaintiff DDI has asserted claims of promissory estoppel and breach of contract. Windham moves the Court for judgment on the pleadings arguing that DDI has not alleged facts sufficient to meet the elements of either claim. Windham contends that it did not make any promise or agreement with DDI and therefore could not have broken a promise or breached an agreement.

Plaintiff asserts a claim of breach of contract. "The establishment of a contract requires that the parties mutually assent to be bound by all its material terms; the assent must be manifested in the contract, either expressly or impliedly; and the contract must be sufficiently definite to enable the court to determine its exact meaning and fix exactly the legal liabilities of the parties." *Forrest Assocs. v. Passamaquoddy Tribe*, 2000 ME 195, ¶ 9, 760 A.2d 1041.

DDI has also brought a claim for promissory estoppel. Maine has adopted the definition of promissory estoppel found in the Restatement:

2

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

*See Panasonic Communications & Sys. Co. v. State of Maine,* 1997 ME 43, ¶ 17, 691 A.2d 190; RESTATEMENT (SECOND) OF CONTRACTS § 90(1). DDI alleges that Maine Law, the Charter of the Town of Windham, the Notice to Bidders, and special bid documents required that Windham award the Project to the lowest bidder. Defendant argues that none of the cited documents binds Windham in contract or constitute a promise on Windham's behalf.

DDI cites to 23 M.R.S. § 4243, which governs the award of contracts by the MDOT, for support. "The department has the right to reject any bids and to advertise for new bids if, in the department's opinion, doing so is in the best interest of the department; otherwise, the department shall award the contract to the responsible bidder submitting the lowest bid." 23 M.R.S. § 4243. Section 4243 does not set out contractual terms binding a municipality and a bidder. Rather, section 4243 sets out the process by which the MDOT will award contracts, granting MDOT considerable discretion to "reject any bids ... if, in the department's opinion, doing so is in the best interest of the department." The Court does not find that section 4243 create an enforceable promise or agreement.

DDI alleges that the terms of the Charter of the Town of Windham creates an agreement or promise obligating Windham to bidders on contracts. According to the section of the Charter of the Town of Windham cited by DDI: "The Town Manager shall act as purchasing agent for all departments of the Town and provide for

3

cooperative purchasing arrangements where feasible, and shall submit to competitive bids any transaction in excess of the amount set by order of the Council." Charter of the Town of Windham, Art. III, § 2(A)(9). Similarly to 23 M.R.S. § 4243, the language found in the Charter of the Town of Windham does not amount to an agreement or promise. The language of the Charter merely holds that the Town Manager will seek competitive bids for certain transactions. The language does not require the acceptance of the lowest bid, nor does it create contractual or equitable rights for those who seek to offer "competitive bids".

Finally, DDI points to the Notice to Bidders and the special bid documents as the basis of the alleged contract and promise. The Notice to Bidders states that the "basis of the award will be low bid." Notice to Bidders, ¶ 3. The special bid documents note that the "award of the contract, if it be awarded, shall be made ... to the lowest responsible and qualified bidder whose proposal complies with these bid documents." Special Provisions § 103.02. The special provisions also state that "[t]he Town reserves the right to reject any bid if the evidence submitted by, or the investigation of such bidder fails to satisfy the town that such bidder is properly qualified to carry out the obligations of the Contract and to complete the work contemplated therein." Special Provisions § 102.01.

It is settled law in Maine that a solicitation for bids is neither a contract nor a promise, but merely a request for offers. "[A]n advertisement soliciting bids is not an offer but only a request for offers that may be accepted or rejected." *Carroll F. Look Constr. Co. v. Town of Beals*, 2002 ME 128, ¶ 9, 802 A.2d 994. Plaintiff distinguishes the facts of this case from the facts presented to the court in *Carroll*,

4

noting that in the current matter, "the Town's procurement process failed to follow the Town's bid documents". Plaintiff argues that the bid documents state that Windham would award the Project to the lowest qualified bidder, that DDI was the lowest bidder, and that DDI is qualified. Therefore, Plaintiff argues that Windham has breached its agreement to the published terms and/or broken the promise to rely upon the published terms upon which DDI reasonably relied.

The Court finds that even if this case is distinguishable from *Carroll* on those bases, the holding in *Carroll* remains applicable. A request for bids does not demonstrate mutually assented to terms, nor does it constitute a "promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee". The Court finds that Plaintiff has not pled facts sufficient to make out a claim for either promissory estoppel or breach of contract.

IV.    Conclusion

The Court grants Defendant's Motion for Judgment on the Pleadings.

Date: 3/13/17

Lance E. Walker
Justice, Superior Court

5

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
Docket No.: AP-16-15

)
DESIGN DWELLINGS, INC. d/b/a )
DDI, CONSTRUCTION )
)
                Plaintiff, )
)
    v. )
)
TOWN OF WINDHAM )
)
            Respondent )
and

R.J.GRONDIN & SONS,

       Party-in-Interest

ORDER ON PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION

STATE OF MAINE
Cumberland. ss. Clerk's Office

APR 22 2016
RECEIVED

This matter is before the Court on Plaintiff's motion for preliminary injunctive relief. For the reasons stated herein, Plaintiff's motion is denied.

Facts

The Town of Windham (hereafter the "Town"), published an advertisement inviting bids on a construction project which involved the realignment and construction of approximately 800 feet of Angler's Road, new sidewalks, associated storm water management facilities, 700 feet of roadway widening and sidewalk improvements on Route 302, and traffic signal and lane striping improvements on Route 302. The Town also invited bids for work to be performed for the Portland Water District, including the extension of a water main and various other related construction projects.

1

Bidders interested in the projects received a so-called Notice to Bidders dated February 1, 2016, as well as a bid form and a volume of pages of information regarding the project. The Notice to Bidders provided the process by which bids would be submitted and evaluated. Relevantly to the instant dispute, the Notice to Bidders explained that the Town reserved the right to reject any and all bids should it be deemed in the best interest of the Town to do so. Further the Town expressly reserved the right to evaluate the bidder's qualifications and capability to perform, among other matrices used in evaluating the bidders.

The Town instructed its consultant, William Haskell, P.E. to review the bids and make recommendations for the award. Mr. Haskell recommended to the Town Manager that the bid be awarded to Grondin. Grondin was identified as the low bidder on the Windham portion of the project while DDI presented the lowest bid on the Portland Water District part of the project. However, Mr. Haskell expressed several concerns regarding the DDI bid, including in relevant part that its bid was substantially lower than any of the other eight bids and that the bid did not therefore properly account for the complexity of the project. Haskell expressed concern that DDI did not indicate that it had done any comparable projects in scope and complexity; that its experience primarily involved new subdivision roads; that DDI had not performed traffic signal construction work; and that DDI had listed two projects where work had not yet begun.

By letter dated March 17, 2016, the Town Manager wrote a letter to DDI explaining the reasons why DDI was not the successful bidder which included the following: that Grondin was the low bidder for the Town side of the project; that

2

DDI did not have the requisite qualification for the project because it lacked sufficient relevant experience; that the Town had unsatisfactory experience working with DDI; and DDI attempted to change its bid after the bid opening through an email of March 16, 2016. The Town followed up with substantially more detailed analysis of the various and sundry reasons why it concluded DDI was not qualified for the project based on its own experience with DDI as well as information regarding DDI's work performed on town projects in Windham and Gorham.

Conclusions

It is the Plaintiff's burden to satisfy all four of the following elements of injunctive relief:

1.  That Plaintiff has a likelihood of success on the merits;

2.  That Plaintiff will suffer irreparable injury if the injunction is not granted;

3.  Plaintiff's injuries outweigh any harm to Defendant; and

4.  The public interest will not be adversely affected by granting the injunction.

*Ingraham v. Univ. of Me. At Orono*, 441 A.2d 691 A.2d 691, 693 (Me. 1982).

Should Plaintiff fail to demonstrate that any one of these criteria are met, injunctive relief shall be denied. *Town of Charleston v. Sch. Admin. Dist. No. 68*, 2002 ME 95, PP6-7, 798 A.2d 1102, 1104.

A.      Likelihood of Success on the Merits

For analytical clarity, it appears that the relative strength of the case on the merits is almost entirely based in process; to wit, whether the Town was allowed to follow its own bidding and process and, if so, whether it in fact followed its own

3

bidding process. To the extent that Plaintiff's argument invites the Court to makes its own *a priori* determination as to whether the Town awarded the bid to the construction company that is most advantageous to the Town, or whether it failed to award the project to DDI because it determined that DDI was not qualified, the Court rejects that invitation. The town enjoys broad deference in its own factual determinations.

When reviewing the decision of a municipal agency pursuant to Maine Rule of Civil Procedure 80B, the court reviews the decision "for abuse of discretion, errors of law, or findings not supported by the substantial evidence in the record." *Wyman v. Town of Phippsburg*, 2009 ME 77, ¶ 8, 976 A.2d 985 (internal quotation marks and citation omitted). The party seeking to vacate the municipal agency's decision bears the burden of persuasion on appeal. *Bizier v. Town of Turner*, 2011 ME 116, ¶ 8, 32 A.3d 1048. Guided by this standard of review, the Court is not persuaded that there is a likelihood of success on the merits of Plaintiff's petition.

The interpretation of local ordinances is a question of law that the court reviews *de novo*. *Rudolph v. Golick*, 2010 ME 106, ¶ 8, 8 A.3d 684. The court examines ordinances for their plain meaning and construes the terms of ordinances reasonably "in light of the purposes and objectives of the ordinance and its general structure." *Id.* ¶ 9. Court must also give the words in the ordinance their "plain and ordinary meaning" and must not be construe the ordinance "to create absurd, inconsistent, unreasonable, or illogical results." *Duffy v. Town of Berwick*, 2013 ME 105, ¶ 23, 82 A.3d 148 (internal quotation marks and citation omitted). If the meaning of an ordinance is clear on its face, the court looks no further. *Rudolph*, 2010 ME 106, ¶ 9, 8 A.3d 684. The Court

4

concludes that the Town's Charter and Purchasing Policy are sufficiently clear on their face and that the Town acted in accordance with them.

Plaintiff argues unpersuasively that the Town of Windham was required to comply with MDOT bidding in all respects as set forth in 23 M.R.S. § 4243, and that it failed to do so. The subsidized funding of the project, which at least in part comes from the MDOT, apparently animates plaintiff's argument. There is no recognized canon of statutory or contractual construction which would render such a benign relationship so significant as to impair the Town's authority to apply its own bidding procedures, as reflected in its Charter and Purchasing Policy. Not only is this analytically true based upon the lack of any controlling statute to the contrary and a relationship between the MDOT and the Town as reflected in the MPA, but it is also in keeping with the plenary powers reserved to the smallest political subsidiary unit, otherwise known generally as Home Rule authority. Absent a statute to the contrary, the Town of Windham enjoys freedom to contract by utilizing procedures it regards to be in its best interest. With that axiomatic conclusion in place, that leaves Plaintiff's quasi-contractual claim, which is equally unmoving.

Plaintiff argues that from a contractual standpoint, the Town failed to properly handle this bid. While Plaintiff refers to discreet portions in the Notice to Bidders, it ignores less helpful portions of the Notice that militate against its argument. Plaintiff appears to argue that the only language of any moment to the analysis is that the award will be based on the low bid. However the Notice also allows for the Town to reject an unqualified low bidder and also retains the right to reject a bid if doing so is in the best interest of the Town. In fact, Plaintiff's counsel

conceded during the non-testimonial hearing on the motion that the low bid is not the sole determinative factor in awarding the bid. The Town naturally can evaluate whether the particular vendor is suitable or other wise qualified for the project. In fact, the Town analyzed information regarding DDI and determined that it was not a qualified low bidder. The Court declines Plaintiff's tacit invitation to second-guess whether the Town's determination that DDI was not a qualified low bidder or whether DDI quote was most advantageous to the Town. The affidavits are clear that the Town made a reasonable determination guided by the language of its own Charter and Purchasing Policy.

Moreover, the Town's invitation of offers to be made for the project is not an offer in its own right, the acceptance of which binds the Town to the terms of the invitation to bid. Even if that were so, and it decidedly is not, the Court is not persuaded the result would be any different.

B.      Whether Plaintiff will suffer irreparable injury in the absence of the injunction.

A temporary restraining order may be granted only if it "clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant." M.R. Civ. P. 65(a); *see also Town of Charleston*, 2002 ME 95, P6, 798 A.2d at 1104; *Emerson*, 563 A.2d at 768. "Proof of irreparable injury is a prerequisite to the granting of injunctive relief." *Bar Harbor Banking & Trust Co. v. Alexander*, 411 A.2d 74, 79 (Me. 1980).

6

"Irreparable injury" is defined as "injury for which there is no adequate remedy at law." *Id*.

Economic harm, standing alone, is inadequate to form the basis of a claim of irreparable injury. There is nothing in Plaintiff's affidavit or argument, which comes near to demonstrating immediate injury for which there is no adequate remedy at law. This is a commercial construction contract "dispute," for which there is an adequate remedy at law; to wit, money damages if properly supported. The fortuity that pursuing such a claim may be laborious and uncertain makes it no more distinguishable than any other civil action for which there is an adequate remedy at law.

The Court does not address the remaining elements of injunctive relief, as either of the foregoing constitutes an adequate basis for denial of Plaintiff's motion. Plaintiff's motion for injunctive relief is denied.

The Clerk is directed to enter this Order on the civil docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Date: 4/22/16

Lance E. Walker
Justice, Superior Court

7